1  SAM SHERMAN, ESQ. (Bar No. 228673)
   shermans@higgslaw.com
2  LOREN G. FREESTONE, ESQ. (Bar No. 191868)
   lfreestone@higgslaw.com
3  HIGGS, FLETCHER & MACK LLP
   401 West "A" Street, Suite 2600
4  San Diego, CA  92101-7913
   TEL: 619.236.1551
5  FAX: 619.696.1410

6  Attorneys for Plaintiff
   CARLOTTA BLOUNT, on behalf of herself and on
7  behalf of all persons similarly situated

8

FILED

09 JUL 31 PM 4:14

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:                           DEPUTY

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOTTA BLOUNT, on behalf of herself and on behalf of all persons similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ADP, INC., a New Jersey Corporation; Wilson Worldwide, LLC, dba Wilson HR; and DOES 1-50, <br><br> Defendant. | CASE NO. <br> '09 CV 1668 JAH POR <br><br> **COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL** |

**COMES NOW,** Plaintiff, Carlotta Blount ("BLOUNT"), and brings this class and/or collective action against Defendants Automatic Data Processing, Inc. ("ADP") and Wilson Worldwide LLC dba Wilson HR ("WILSON") on behalf of herself and other similarly situated individuals pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 et seq. and California Labor Code sections 201, 203, 510, and 1194 et seq.

## SUMMARY OF ALLEGATIONS

1.      BLOUNT alleges that ADP has engaged in a systematic pattern of avoiding paying employees overtime, providing full benefits, and paying severance by misclassifying these employees as "independent contractors" or "contract employees" (hereinafter "Contract Employees") even though these employees worked exclusively for ADP, had their work directed

919515.1

Case No.

1  exclusively by ADP supervisors, were required to participate in ADP training and conferences,

2  received reimbursement from ADP for business expenses, received W-2's, and had taxes and

3  withholdings taken out of their paychecks.

4      2.    ADP went to such lengths to achieve this Contract Employee ruse that it actually

5  moved employees off its payroll and contracted with outside companies, like WILSON, to "re-

6  hire" these same individuals.  Even after the "termination and re-hire," these employees had the

7  same ADP supervisors, ADP projects, ADP training, ADP hardware and software, ADP associate

8  I.D.'s, and ADP payroll.  They performed the same work as ADP "employees," but were never

9  provided the full benefits and wages offered to such employees.  ADP misclassified them as

10  Contract Employees to avoid paying them the wages and benefits entitled to other ADP

11  employees.

12      3.    Even more egregious, ADP then directly told these employees—the same

13  employees they claimed were Contract Employees—to stop billing any hours over forty (40) in a

14  given week because they were exempt.  ADP, a company in the business of providing human

15  resource services, told employees it labeled as Contract Employees to not bill over forty hours in

16  a week because they were exempt.

17  **PARTIES**

18      4.    BLOUNT is, and at all times herein mentioned was, a resident of the County of

19  San Diego, State of California and a former employee of ADP and WILSON.

20      5.    BLOUNT is informed and believes, and thereon alleges, that at all times herein

21  mentioned, Defendant ADP is a corporation with its principal place of business in Roseland, New

22  Jersey and incorporated under the laws of the State of Delaware.

23      6.    BLOUNT is informed and believes, and thereon alleges, that at all times herein

24  mentioned ADP was and is a multi-national corporation with nearly $9 billion in revenues and

25  over 585,000 clients doing business throughout this state, the United States, and the world.  ADP

26  is one of the world's largest providers of business outsourcing solutions.

27      7.    ADP is authorized to conduct and does conduct business in the County of San

28  Diego and the State of California.  ADP has offices throughout this state, regional offices

1   throughout Southern California, and a regional office in San Diego.  ADP further transacts

2   business on a daily basis with clients located throughout this state and county.  Finally, ADP hires

3   employees residing in the State of California and the County of San Diego.

4        8.     BLOUNT is informed and believes, and thereon alleges, that at all times herein

5   mentioned, Defendant WILSON is a corporation with its principal place of business in Tampa,

6   Florida and incorporated under the laws of the State of Florida.

7        9.     BLOUNT is informed and believes, and thereon alleges, that at all times herein

8   mentioned WILSON is a multi-national corporation providing full service human capital

9   solutions to clients across the world.

10        10.    WILSON is authorized to conduct and does conduct business in the County of San

11   Diego and the State of California.  WILSON contracts with corporations in the State of California

12   and the County of San Diego to provide human capital solutions.  WILSON also hires employees

13   residing in the State of California and the County of San Diego.

14        11.    The true names and capacities of DOE defendants named herein as DOES 1-50,

15   inclusive, are unknown to BLOUNT who therefore sues such defendants by such fictitious names.

16   BLOUNT will seek leave to amend the complaint to allege the true names and capacities of such

17   DOE defendants when the same is ascertained

18        12.    BLOUNT is informed and believes, and thereon alleges, that each fictitiously

19   named defendant is responsible in some manner for the acts or omissions herein alleged and

20   BLOUNT's injuries and damages as herein alleged are directly, proximately and/or legally caused

21   by defendants and all of their acts or omissions.

22        13.    BLOUNT is informed and believes and based thereon alleges that each defendant

23   is and, at all times relevant, was the agent or employee of each of the remaining defendants and in

24   committing the acts herein alleged was acting within the scope of his or her authority as agent or

25   employee and with the permission, knowledge and consent of the remaining defendants.

26        14.    BLOUNT is further informed and believes and based thereon alleges that at all

27   relevant times each Defendant, directly or indirectly, or through agents or other persons,

28   employed Plaintiff and the other members of the Collective Action Class and the California Class

1   and exercised control over their wages, hours, and working conditions.  Plaintiff is informed and

2   believes and thereon alleges that Defendants were joint-employers of Plaintiff and the other

3   members of the Collective Action Class and the California Class.  At all relevant times to this

4   action, Plaintiff and the other members of the Collective Action Class and the California Class

5   have, directly or indirectly, performed services to each of the Defendants and to the mutual

6   benefit of all Defendants.   Plaintiff is informed and believes and thereon alleges that, at all

7   relevant times, each Defendant was the principal, partner, joint venturer, successor in interest,

8   and/or predecessor in interest of some or all of the other Defendants, was engaged with some or

9   all of the other Defendants in a joint enterprise for profit, and bore such other relationships to

10  some or all of the other Defendants so as to be liable for their conduct with respect to the matters

11  alleged below.  Plaintiff is informed and believes and thereon alleges that each Defendant acted

12  pursuant to and within the scope of the relationships alleged above, that each Defendant knew or

13  should have known about and authorized, ratified, adopted, approved, controlled, aided, and

14  abetted the conduct of all other Defendants.

15                              **VENUE AND JURISDICTION**

16          15.     This Court has jurisdiction over Plaintiff's federal claims pursuant to 29 U.S.C.

17  §201, et seq.; 29 U.S.C. §216, 28 U.S.C. §1331 and 28 U.S.C. §1337(a).  The Court has

18  supplemental jurisdiction over Plaintiff's California-based claims pursuant to 28 U.S.C. §1367.

19          16.     Venue in this district is proper pursuant to 28 U.S.C. §1391(b)(i) and (ii) because

20  Defendants regularly transact business in this District and regularly employ workers in this

21  District.  Plaintiff was employed by Defendants in this District and a substantial portion of the

22  actions complained of were conducted within this District.

23                              **GENERAL ALLEGATIONS**

24          17.     ADP is one of the largest companies in the United States providing HR, payroll,

25  tax and benefits administration solutions.  ADP employs thousands of individuals throughout the

26  country.

27          18.     ADP has a business plan that involves not only using "employees," but classifying

28  various of its staff as Contract Employees.  By affixing the Contract Employee label, ADP avoids

1  paying these individuals overtime, providing them benefits, or paying them the severance offered

2  to individuals ADP classifies as "employees."

3      19.    ADP also avoids paying the benefits and wages described above by contracting

4  with third-party staffing companies.  These companies, including WILSON and the other Doe

5  Defendants, allow ADP to place its employees on their payroll to further the Contract Employee

6  scheme.

7      20.    These Contract Employees, which include BLOUNT and the rest of the Collective

8  and California Class, are not truly employees of WILSON and the other Doe Defendants.

9  Instead, they are jointly employed by ADP as well as WILSON and the other Doe Defendants.

10  ADP and the other Defendants co-determined those matters governing the essential terms and

11  conditions of their employment.  Even though ADP and WILSON are these employees' joint

12  employer, they are not provided the salary, benefits, or wages of other ADP employees.  ADP

13  uses the Contract Employee ruse to avoid paying them the same salary, benefits, and wages

14  provided to others.

15      21.    Despite the Contract Employee label, these individuals are indistinguishable from

16  ADP employees.  All of them work in groups alongside "employees" and perform the same

17  services, work the same hours, and report to the same supervisors.  These Contract Employees

18  have ADP laptops, ADP software, access to ADP's intranet and help desk, ADP associate

19  identification numbers, and ADP employee badges.  They receive direction directly from ADP

20  supervisors, submit their hours to ADP for processing, seek reimbursement for business expenses

21  directly from ADP, participate in required ADP training, attend mandatory ADP conferences, and

22  interviewed for their jobs with ADP alone.  These individuals are identical to ADP employees in

23  every sense of the word and are forced to work alongside those employees and watch them

24  receive better wages, benefits, and severance because of an artificial label attached by ADP.

25                  **SHARED SERVICES SALES RECRUITING TEAM**

26      22.    The Shared Services Sales Recruiting Team ("Shared Services") is a group within

27  ADP that exemplifies this business practice.  Shared Services is a branch of ADP with the sole

28  focus of recruiting a sales force to sell ADP's services to businesses around the country.

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

919515.1              5              Case No.

23.     Prior to 2006, ADP classified each member of the Shared Services group as an "employee." These employees interviewed with ADP, were hired by ADP, and received their paychecks directly from ADP.

24.     In 2006, ADP inexplicably decided that it no longer wanted to employ the members of Shared Services. ADP wanted to receive the benefit of these individuals' full-time efforts, but did not want to provide them the wages, salary, and benefits offered to its "employees." However, ADP knew that each of these employees were just that—employees. Therefore, it needed a scheme to achieve this objective.

25.     ADP's scheme involved reclassifying these employees as Contract Employees. ADP felt that, by labeling them independent contractors, it could obtain the benefit of their full-time work for the company without being burdened with providing them full wages and benefits.

26.     In a further attempt to distance itself from these employees, ADP entered into contracts with third-party staffing companies to "employ" these individuals. ADP essentially terminated each employee from its payroll in 2006 and had them "re-hired" by WILSON and Doe Defendants. ADP classified these former employees as Contract Employees from that day forward.

27.     ADP blurred the employer line from the moment it terminated these employees and had them "re-hired" by WILSON and the Doe Defendants. Some former ADP employees received letters from ADP after their re-hire. These letters, on ADP letterhead and signed by ADP supervisors, congratulated these former employees and offered them a "conditional offer of employment" with ADP. ADP sent these letters despite the fact that it claimed it no longer employed these individuals and that they were now employees of WILSON and Doe Defendants.

28.     The work of the Contract Employees never changed after they were "re-hired" by WILSON and Doe Defendants. They performed their work on ADP laptops that ran ADP software. They received their work assignments every week from ADP supervisors. They were required to report back to their ADP supervisors every Friday regarding the status of their projects for that week. They received ADP training materials and were required to participate in ADP on-line training. Once per year, they were required to attend a week-long conference offered by

1    ADP to its employees.  They were required to submit all business costs for reimbursement to

2    ADP supervisors for approval.  WILSON and the other Doe Defendants would not refund these

3    business expenses absent ADP approval.  These employees had ADP associate identification

4    numbers that gave them access to ADP's intranet.  Some had ADP employee badges.

5         29.    Even though ADP, WILSON, and Doe Defendants created the illusion that these

6    individuals were Contract Employees, they only worked for ADP.  At no time did they ever work

7    on any of the other accounts held by WILSON or Doe Defendants.

8         30.    These employees' only interaction with WILSON and Doe Defendants involved

9    submitting their weekly hours for payroll.  WILSON and Doe Defendants then had ADP process

10   these employees' checks.  The checks had taxes, social security, and all other deductions taken

11   out.  Defendants never paid any of these individuals as 1099's or gave any of them 1099's for tax

12   purposes.

13        31.    ADP never provided any of the benefits to these Contract Employees that it

14   provided to its other employees.  Regular employees were provided a full benefits package that

15   included health insurance, dental insurance, stock options, prescription drugs, vision coverage,

16   life insurance, disability insurance, business travel insurance, personal accident insurance,

17   retirement and 401(k) plans, tuition reimbursement, and pension benefits.  WILSON and Doe

18   Defendants did not provide these same benefits and the benefits they did provide came at a higher

19   cost than comparable benefits offered by ADP.

20        32.    ADP also denied these employees any overtime pay.  On or before 2006, ADP

21   allowed Shared Services team members to bill overtime.  BLOUNT was one such employee that

22   billed overtime during this period.  In 2006, BLOUNT was informed by her ADP supervisor that

23   she had to stop billing overtime work.  Her ADP supervisor, Ted Moore, informed her that she

24   was now categorized as "exempt" and that she could no longer bill overtime.  Plaintiff is

25   informed and believes that other class members received this same direction from other ADP

26   supervisors, WILSON, and Doe Defendants.

27        33.    ADP told these employees they were exempt in spite of the fact that they fell into

28   none of the exemptions under California or federal law and the fact that ADP treated them as non-

1   exempt employees.  ADP required each employee to submit weekly billings of the hours worked

2   and only paid these employees for time billed.  They also informed them they were "exempt"

3   despite the fact that, at the same time, ADP took the position they were Contract Employees.

4        34.     ADP also denied overtime for work performed at mandatory training conference.

5   ADP required Shared Services to attend an annual conference in a host city.  Each member of

6   Shared Services coordinated their travel to the conference through ADP's travel department with

7   all air and hotel accommodations pre-paid directly by ADP.  ADP allowed these employees to bill

8   the time spent at the annual training conference, however, ADP did not allow Plaintiff to bill any

9   time at the training in excess of 40 hours per week.  Defendants knew that these employees were

10  working in excessive of sixty (60) hours per week during this training, but refused to allow these

11  individuals to bill overtime or any hours over forty (40).  Several individuals asked if they could

12  bill over forty hours during this week to reflect the time actually spent.  The ADP supervisors

13  denied this request.

14       35.     Further, through its management of the employees in the Shared Services team,

15  ADP and the other Defendants knew that these employees could not perform the work assigned in

16  just forty (40) hours a week.  ADP and the other Defendants gave these employees complex and

17  varied tasks throughout the week.  Defendants knew that it was impossible for these employees to

18  complete these tasks within forty (40) hours and that overtime would be required.

19       36.     Despite this knowledge, ADP created a culture that prevented these employees

20  from billing any overtime for work performed.  Plaintiff knew that she was not to bill over forty

21  hours and that ADP would not compensate her for any time over forty hours.  On average,

22  Plaintiff's job duties required her to work fifty (50) to sixty (60) hours per week.

23       37.     ADP eventually began to transfer some of these Contract Employees back to its

24  payroll.  Plaintiff is informed and believes that ADP did so out of a recognition of its joint

25  employer and misclassification errors.  However, ADP chose a gradual transfer rather than

26  transferring everyone at once and raising suspicions.

27       38.     From 2006 to the present, ADP began to slowly transfer Shared Services

28  employees back onto its payroll.  From that point forward, a group of Shared Services employees

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

919515.1                                  8                                  Case No.

1   were labeled as ADP employees and some were labeled as Contract Employees.  The Contract

2   Employees and the regular employees worked alongside each other doing the same work,

3   working the same hours, and reporting to the same supervisors.  The Contract Employees,

4   however, had to watch the "employees" receive greater wages and benefits for the same exact

5   work.

6          39.     Beginning in late 2008, ADP began laying off various employees.  ADP's

7   severance program calculated an employee's severance based on his or her salary and length of

8   employment.  This severance could equal up to twenty-six (26) weeks.  On the other hand, ADP

9   only allowed its Contract Employees to receive a maximum of two (2) weeks severance.  The

10  "contract" employees were informed of this "severance" from ADP directly rather than WILSON

11  or Doe Defendants.

12         40.     ADP had various methods of informing a member of Shared Services of his or her

13  termination.  Some employees learned of their termination from ADP several weeks before the

14  effective date and only received a call from WILSON on their last day of employment to

15  officially provide them notice of same.  Other Contract Employees never heard anything from

16  ADP.  Those employees received a call from WILSON informing them that they were terminated

17  effective immediately.  Neither WILSON nor any of the other Doe Defendants offered these

18  Contract Employees work on other accounts.

19         41.     The Contract Employees that had no notice of their termination effectively receive

20  no severance at all.  By contacting them and terminating them effective immediately, the

21  "severance" was really nothing more than two week's notice of termination.

22         42.     In May of 2009, ADP made the decision to "terminate" an entire group of Shared

23  Services employees working for WILSON and Doe Defendants.  ADP alone made that decision

24  and neither WILSON nor Doe Defendants had any role in the decision-making.  The terminated

25  employees were then required to re-apply for "new" positions with ADP.  These new positions

26  were nothing but their same jobs, but now under ADP's exclusive employment.  All but a handful

27  were rehired as full-time ADP employees.

28

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

43.     The employees not re-hired were never contacted by WILSON or Doe Defendants until the day of their termination to inform them that their employment was terminated effective immediately.  These employees received ADP's standard two-week Contract Employee severance package rather than the employee package.  None of the employees terminated by ADP were provided any alternative work with WILSON or Doe Defendants.

44.     Shared Services merely provides one example of the efforts made by ADP to avoid its requirements under the FLSA and other California and federal laws.  Plaintiff is informed and believes that ADP misclassified other employees to avoid wage and hour laws and contracted with entities other than WILSON to achieve these goals.  Plaintiff is informed and believes there are hundreds of misclassified employees entitled to wages, benefits, and severance never paid by ADP.

45.     Defendants' unlawful, unfair, and deceptive employment and wage practices denied Plaintiff and the other class members their lawful wages due for all hours worked as required by California and federal law.

46.     In this action, Plaintiff, on behalf of herself and the class, seeks to recover all the money that Defendants were required by law to pay, but failed to pay, to Plaintiff and all other class members for work performed.  Plaintiff also seeks to recover all benefits owed to her and all wages Defendants failed to pay.  These wages include, among other things, overtime and severance.  Plaintiff also seeks penalties and all other relief available to her and other similarly situated employees under California law.  Plaintiff also seeks declaratory relief finding that the Defendants' employment practices and policies violated California law and injunctive relief to enjoin the Defendants from continuing to engage in such employment practices and as necessary to remedy the unfair and unlawful employment practices.

47.     Plaintiff and all members of the class are and were classified under California and federal law as non-exempt from applicable federal and state labor laws.  Plaintiff and the other members of the class do not meet the requirements of exempt employees under California or federal law.

///

1

## FLSA COLLECTIVE ACTION ALLEGATIONS

2      48.    The Collective Action Class consists of all current and former employees of

3   Defendants that report to and/or were supervised by ADP, were identified as independent

4   contractors (and specifically "Contract Employees"), and received pay checks from entities other

5   that ADP.   ("Collective Action Class")

6      49.    In this collective action, Plaintiff seeks to represent all individuals who, at any

7   time during the three years preceding the filing of this Complaint, fall into the definition of the

8   Collective Action Class.

9      50.    Plaintiff is similarly situated with the Collective Action Class in that: (a) Plaintiff

10   and the Collective Action Class were jointly employed by ADP and ADP's contractors; (b)

11   Plaintiff and the Collective Action Class were not paid overtime and minimum wages for all

12   hours worked; (c) Plaintiff and the Collective Action Class were not provided the compensation

13   and benefits of ADP employees even though ADP was their joint employer; (d) Plaintiff and the

14   Collective Action Class were only provided two-weeks severance upon termination while

15   individuals classified by ADP as "employees" were provided up to twenty-four (24) weeks of

16   severance; (e) Defendants knowingly and willfully violated provisions of the FLSA by not paying

17   Plaintiff and the Collective Action Class their wages, benefits, and severance; and (d) as a result

18   of Defendants' conduct, Plaintiff and the Collective Action Class have been similarly damaged in

19   that they have not received full wages and benefits earned.

20      51.    This Action is maintained as an "opt-in" collective action pursuant to 29 U.S.C.

21   §216(b) given the similarity of claims.  Plaintiff is also entitled to liquidated damages, costs and

22   attorneys' fees under the FLSA.

23      52.    All individuals employed by Defendants as Contract Employees should be given

24   notice and be allowed to give their consent in writing to the collective action pursuant to 29

25   U.S.C. §216(b).

26      53.    The names and addresses of the Collective Action Class are available from

27   Defendants and notice should be provided to the Collective Action Class as soon as possible.

28   ///

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

919515.1                                      11                              Case No.

## CALIFORNIA CLASS ACTION ALLEGATIONS

54.     The California Class consists of all current and former employees of Defendants that report to and/or were supervised by ADP, were identified as independent contractors (and specifically "Contract Employees"), and received pay checks from entities other that ADP. ("Collective Action Class")  The California Class is restricted to individuals residing in the State of California during the California Class period.

55.     The California Class brings various causes of action for violation of California's wage and hour laws as a class action, pursuant to Fed. R. Civ. P.23 (a), (b)(2), and (b)(3), on behalf of all California Class members.

56.     The California Class is so numerous that joinder of all members is impracticable. Plaintiff is informed and believes, and on that basis alleges, that during the California Class Period defendants have employed at least one hundred persons who satisfy the definition of the California Class.

57.     Despite the class members numerosity, their identities are readily ascertainable through an examination Defendants' records, which it is required by law to maintain.  Likewise, the dollar amount owed to the California Class is also readily ascertainable by an examination of those same records.

58.     Common questions of law and fact exist as to members of the California Class, including, but not limited to, the following:

a.   Whether Defendants unlawfully failed to pay overtime compensation in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq., and the California Labor Code and related regulations, Cal. Labor Code §§ 201, 202, 203, 226, 510, 1174, 1174.5, and 1194, Cal. Wage Order No. 4.

b.   Whether the Plaintiffs and the Class members are non-exempt employees entitled to overtime compensation for overtime hours worked under the overtime pay requirements of California law;

c.   Whether Defendants' policy and practice of classifying the California Class members as exempt from overtime entitlement under California law and Defendants' policy and

1  practice of failing to pay overtime to the California Class members violate applicable provisions

2  of California law, including applicable statutory and regulatory authority;

3         d.  Whether Defendants' unlawfully failed to keep and furnish California

4  Class members with records of hours worked, in violation of Labor Code §§ 226 and 1174;

5         e.  Whether Defendants failed to provide the California Class with meal and

6  rest periods pursuant to California law and Industrial Welfare Commission Orders;

7         f.  Whether Defendants failed to provide the California Class with full

8  benefits provided to other employees as required under California law and Industrial Welfare

9  Commission Orders;

10        g.  Whether Defendants' policy and practice of failing to pay the California

11  Class all wages due within the time required by law after their employment ended violates

12  California law; and

13        h.  The proper measure of damages sustained and the proper measure of

14  restitution recoverable by members of the California Class.

15        59.  Plaintiff's claims are typical of the Class members' claims.  Plaintiff, like other

16  Class members, was subjected to Defendants' policies and practices of refusing to pay overtime,

17  benefits, and severance in violation of California law.  Plaintiff's job duties were typical of those

18  of other Class members.

19        60.  Plaintiff will fairly and adequately represent and protect the interests of the

20  California Class.  Plaintiff has retained counsel competent and experienced in complex labor and

21  employment litigation.

22        61.  Class certification of the California state law claims is appropriate pursuant to Fed.

23  R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally

24  applicable to the Class, making appropriate declaratory and injunctive relief with respect to

25  Plaintiff and the California Class as a whole.  Plaintiff and the California Class are entitled to

26  injunctive relief to end Defendants' common and uniform practice of failing to properly

27  compensate its employees for all overtime work performed for the benefit of Defendants.

28

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

919515.1                                    13                                    Case No.

1       62.    Class certification of the California law causes of action is also appropriate under

2   Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the California Class

3   predominate over any questions affecting only individual members of the California Class, and

4   because a class action is superior to other available methods for the fair and efficient adjudication

5   of this litigation.  Defendants' common and uniform policy and practice of unlawfully treating

6   members of the California Class as exempt from overtime pay requirements violates California

7   law.  The damages suffered by individual California Class members are small compared to the

8   expense and burden of individual prosecution of this litigation.  In addition, class certification is

9   superior because it will obviate the need for unduly duplicative litigation that might result in

10   inconsistent judgments about Defendants' practices.

11       63.    Plaintiff intends to send notice to all members of the California Class to the extent

12   required by Rule 23.

13                      **ERISA CLASS ACTION ALLEGATIONS**

14       64.    Plaintiff brings certain causes of action for violations of ERISA as a nationwide

15   class action pursuant to FRCP 23(a) and (b)(1) and/or (b)(2) as representatives of a proposed

16   ERISA Class.

17       65.    The ERISA class consists of all current and former employees of Defendants that

18   were misclassified as Contract Employees and, as such, did not receive the same wages, benefits,

19   and severance as individuals classified as ADP employees.  Plaintiff only maintains this class

20   action claim to the extent this Court later determines that Defendants' benefits and severance

21   plans qualify as an ERISA plan.  Plaintiff and the ERISA Class will drop this claim if the Court

22   later determines that these benefits and severance programs do not qualify as an ERISA plan.

23       66.    The ERISA Class is so numerous that joinder of all members is impracticable.

24   Plaintiff is informed and believes and thereon alleges that during the applicable period,

25   Defendants employed several hundred persons that satisfy the definition of the ERISA Class.

26       67.    Questions of law and fact common to the ERISA Class as a whole include, but are

27   not limited to, the following:

28

a. Whether Defendants failed and continues to fail to maintain accurate records of actual time worked and wages earned by the Plaintiff and the ERISA Class;

b. Whether Defendants failed and continue to fail to provide accurate wage statements itemizing all actual time worked and wages earned by the Plaintiff and the ERISA Class;

c. Whether Defendants continue to violate ERISA as alleged herein;

d. Whether Defendants provided Plaintiff and the ERISA Class with all benefits afforded to individuals Defendants classified as "employees;"

e. Whether Defendants paid Plaintiff and the ERISA Class the severance provided to individuals Defendants classified as "employees;"

f. Whether Defendants paid Plaintiff and the ERISA class all compensation which they were paid or entitled to be paid as required by ERISA;

68. Plaintiff's claims are typical of those of the ERISA Class. Plaintiff, like all other ERISA Class members, was subject to Defendants' policies and practices of failing to compensate for overtime worked, failing to provide full benefits given to other employees, and failing to provide the severance package provided to other employees.

69. Plaintiff will fairly and adequately represent and protect the interests of the ERISA Class. Plaintiff has retained counsel competent and able to handle the legal issues involved in this case.

70. Class certification of the ERISA claims is appropriate pursuant to FRCP 23(b)(1) because adjudication with respect to individual members of the class would, as a practical matter, be dispositive of the interests of the other members and/or pursuant to FRCP 23(b)(2) because Defendants acted or refused to act on grounds generally applicable to the ERISA Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the ERISA Class as a whole.

71. Plaintiff intends to send notice to all members of the ERISA Class to the extent required by Rule 23.

///

## FIRSTCLAIM FOR RELIEF

### (Fair Labor Standards Act, 29 U.S.C. § 201 et seq.,

### Brought by Plaintiff on Behalf of Herself and the Collective Action Class)

72.     Plaintiff, on behalf of herself and all Plaintiffs, realleges and incorporate by reference the preceding paragraphs as if they were set forth again herein.

73.     At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.  At all relevant times, Defendants have employed, and continues to employ, "employee[s]," including Plaintiff, and each of the Collective Action Class. At all relevant times, Defendants have had gross operating revenue in excess of $500,000.

74.     Attached hereto is a consent to sue signed by Plaintiff in this action pursuant to § 16(b) of the FLSA, 29 U.S.C. §§ 216(b) and 256.  (Exhibit "A".)  It is likely that other individuals will sign consent forms and join as plaintiffs on this claim in the future.

75.     The FLSA requires each covered employer, such as ADP and WILSON, to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a work week.

76.     The Collective Action Class is entitled to be paid overtime compensation for all overtime hours worked.

77.     At all relevant times, ADP and WILSON, pursuant to its policies and practices, failed and refused to pay overtime premiums to the Collective Action Class for their hours worked in excess of forty hours per week.

78.     By failing to compensate Plaintiff and the Collective Action Class at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, Defendants have violated, and continues to violate, the FLSA, 29 U.S.C. §§ 201, at seq., including 29 U.S.C. § 207(a)(1) and § 215(a).

79.     By failing to record, report, and/or preserve records of hours worked by Plaintiff and the Collective Action Class, Defendants have failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions

1   and practice of employment, in violation of the FLSA, 29 U.S.C. §§ 201, et seq., including 29

2   U.S.C. § 211(c) and § 215(a).

3       80.    Defendants further violated the FLSA by failing to provide Plaintiff and the

4   Collective Action Class with all benefits entitled to them as ADP employees.  Plaintiff and the

5   Collective Action Class were also denied severance they were entitled to as ADP employees.

6       81.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA

7   within the meaning of 29 U.S.C. § 255(a).

8       82.    Named Plaintiffs, on behalf of themselves and the Collective Action Class, seek

9   recovery of their attorneys' fees and costs of action to be paid by Defendants, as provided by the

10  FLSA, 29 U.S.C. § 216(b).

11      83.    Named Plaintiff, on behalf of herself and the Collective Action Class, seek

12  damages in the amount of their respective unpaid overtime compensation, liquidated damages as

13  provided by the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as

14  the Court deems just and proper.

15  **SECOND CLAIM FOR RELIEF**

16  **(Cal. Wage Order No. 4; Cal. Labor Code §§ 510, 1194**

17  **Brought by Plaintiff on Behalf of Herself and the California Class)**

18      84.    Plaintiff, on behalf of herself and all California Class, realleges and incorporates

19  by reference the preceding paragraphs as if they were set forth again herein.

20      85.    California law requires an employer, such as Defendant, to pay overtime

21  compensation to all non-exempt employees for all hours worked over 40 per week, or over eight

22  per day.

23      86.    Plaintiff and the California Class are non-exempt employees entitled to be paid

24  overtime compensation for all overtime hours worked.

25      87.    Throughout the California Class Period, and continuing through the present, the

26  Plaintiff and the California Class worked in excess of eight hours in a workday and/or forty hours

27  in a workweek.

28  ///

88.     During the California Class Period, Defendant misclassified Plaintiff and the California Class as exempt from overtime pay entitlement and failed and refused to pay them overtime premium pay for their overtime hours worked.

89.     As a direct and proximate result of Defendant's unlawful conduct, as set forth herein, Plaintiff and the California Class have sustained damages, including loss of earnings for hours of overtime worked on behalf of Defendant in an amount to be established at trial, prejudgment interest, and costs and attorneys' fees, pursuant to statute and other applicable law.

### THIRD CLAIM FOR RELIEF

**(California Wage Payment Provisions, Cal. Labor Code 201, 202, & 203**

**Brought by Plaintiff on Behalf of Herself and the California Class)**

90.     Plaintiff, on behalf of herself and the California Class, realleges and incorporates by reference the preceding paragraphs as if they were set forth again herein.

91.     California Labor Code §§ 201 and 202 require Defendants to pay its employees all wages due within the time specified by law.  California Labor Code § 203 provides that if an employer willfully fails to timely pay such wages, the employer must continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced, up to a maximum of thirty days of wages.

92.     The California Class members who ceased employment with Defendants are entitled to unpaid compensation, but to date have not received such compensation.

93.     More than thirty days have passed since certain California Class members left Defendant's employ.

94.     As a consequence of Defendant's willful conduct in not paying compensation for all hours worked, the California Class members whose employment ended during the class period are entitled to thirty days' wages under Labor Code § 203, together with interest thereon and attorneys' fees and costs.

///

///

///

**FOURTH CLAIM FOR RELIEF**

(California Record-Keeping Provisions,

Cal. Wage Order No. 4; Cal. Labor Code §§ 226, 1174, & 1174.5,

Brought by Plaintiff on Behalf of Herself and the California Class)

95.     Plaintiff, on behalf of herself and all California Class, realleges and incorporates by reference the preceding paragraphs as if they were set forth again herein.

96.     California Labor Code §226 provides that an employer must furnish employees with "an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by employees, (3) the number of price rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, except that by January 1, 2008, only the last four digits of his or her social security number of an employee identification number other than a social security number may be shown on the itemized statement, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."

97.     At all times relevant herein, Defendants violated Labor Code §226 with respect to Plaintiff and other members of the California Class, in that Defendants failed to properly and accurately itemize the gross wages earned, the net wages earned, and all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate for these employees.  This failure by Defendants was the intentional result of Defendants' intentional refusal to institute a system for accurately recording hours worked and Defendants' orders and instructions to Plaintiff and the California Class to exclude and delete their overtime hours worked from the hours reported on their time sheets.

98.     Defendants knowingly and intentionally failed to comply with the Labor Code §226, causing damages to Plaintiff, and the other members of the class. These damages include, but are not limited to, unpaid wages for hours actually worked, the costs expended calculating the

1   true hours worked, and the amount of employment taxes which were not properly paid to state

2   and federal tax authorities. These damages may be difficult to estimate. Therefore, Plaintiff, and

3   the other members of the California Class, may recover liquidated damages for the initial pay

4   period in which the violation occurred and each violation in subsequent pay period pursuant to

5   Labor Code §226, in an amount according to proof at the time of trial, plus costs.

### FIFTH CLAIM FOR RELIEF

#### (California Meal Period Provisions,

#### Cal. Wage Order No. 4; Cal. Labor Code §§ 218.5, 226.7, & 512,

#### Brought by Plaintiff on Behalf of Herself and the California Class)

10      99.     Plaintiff, on behalf of herself and the California Class, realleges and incorporates

11   by reference the preceding paragraphs as if they were set forth again herein.

12      100.    Plaintiff and the California Class regularly work and have worked in excess of five

13   hour shifts without being afforded at least a half-hour meal break in which they were relieved of

14   all duty, as required by Labor Code §§ 226.7 and 512 and Wage Order No. 4-2001, § 11(a).  In

15   fact, as part of Defendants scheme of informing Plaintiff that she was exempt, Defendants did not

16   even inform Plaintiff of her right to take a meal and rest period.

17      101.    As a result of Defendant's failure to afford proper meal periods, it is liable to

18   Plaintiffs and the California Class for one hour of additional pay at the regular rate of

19   compensation for each workday that the proper meal periods were not provided, pursuant to

20   Labor Code § 226.7·and Wage Order No. 4-2001, § 11(b).

### SIXTH CLAIM FOR RELIEF

#### (California Unfair Competition Law, Cal. Bus. & Prof. Code §17200 et seq.,

#### Brought by the Plaintiff on Behalf of Herself and the California Class)

24      102.    Plaintiff, on behalf of herself and the California Class, realleges and incorporates

25   by reference the preceding paragraphs as if they were set forth again herein.

26      103.    The foregoing conduct, as alleged, violates the California Unfair Competition Law

27   ("UCL") as codified at Cal. Bus. & Prof. Code § 17200 et seq.  Section 17200 prohibits unfair

28   competition by prohibiting any unlawful or unfair business acts or practices.

1      104.   Beginning at a date unknown to Plaintiffs, but at least as long ago as 2005,

2  Defendants committed, and continues to commit, acts of unfair competition, as defined by the

3  UCL, by, among other things, engaging in the acts and practices described herein. Defendants'

4  conduct as herein alleged has injured the California Class by wrongfully denying them earned

5  wages, and therefore was substantially injurious to the California Class.

6      105.   Defendant engaged in unfair competition in violation of the UCL by violating each

7  of the laws alleged in this Complaint. Each of these violations constitutes an independent and

8  separate violation of the UCL. These laws include, but are not limited to, California Labor Code

9  §§201, 202, 203, 204, 226, 510, 1174, and 1194.

10     106.   Defendants' course of conduct, acts, and practices in violation of the California

11  laws mentioned in the above paragraph constitute a separate and independent violation of the

12  UCL. Defendants' conduct described herein violates the policy or spirit of such laws or

13  otherwise significantly threatens or harms competition.

14     107.   The harm to California Class in being wrongfully denied lawfully earned wages

15  outweighs the utility, if any, of Defendants' policies or practices and, therefore, Defendants'

16  actions described herein constitute an unfair business practice or act within the meaning of the

17  UCL.

18     108.   The unlawful and unfair business practices and acts of Defendants, described

19  above, have injured the California Class in that they were wrongfully denied the payment of

20  earned overtime wages.

21     109.   Plaintiff, on behalf of herself and the California Class, seeks recovery of attorneys'

22  fees and costs of this action to be paid by Defendants, as provided by the UCL and California

23  Labor Code §§ 218, 218.5, and 1194.

24     110.   Plaintiff, on behalf of herself and the California Class, seek restitution in the

25  amount of the respective unpaid wages earned and due at a rate not less than one and one- half

26  times the regular rate of pay for work performed in excess of forty hours in a work week, or eight

27  hours in a day, and double the regular rate of pay for work performed in excess of twelve hours

28  per day, as well as the additional statutory amount provided by California Labor Code §§ 2698

1    and 2699. Plaintiff also seeks such other legal and equitable relief from ADP's unlawful and

2    willful conduct as the Court deems just and proper.

### SEVENTH CLAIM FOR RELIEF

**(ERISA 502(A)(3) to Remedy Failures to Credit Service as Required by ERISA**

**Brought by Plaintiff on Behalf of Herself and the ERISA Class)**

6    111.    Plaintiff, on behalf of herself and all Plaintiffs, realleges and incorporates by

7    reference the preceding paragraphs as if they were set forth again herein.

8    112.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(I), requires that employee benefit plan

9    fiduciaries discharge their duties with respect to the plan solely in the interest of the participants

10    and beneficiaries and, among other things, (1) for the exclusive purpose of providing benefits to

11    participants and their beneficiaries and defraying reasonable expenses of administration; (2) with

12    the care, skill, prudence, and diligence under the circumstances that a prudent person acting in a

13    like capacity and familiar with such matters would use in the conduct of an enterprise of like

14    character and with like aims; and (3) in accordance with the documents and instruments

15    governing the plan.

16    113.    On information and belief, the provisions of the governing instruments confer on

17    Defendants discretionary authority, responsibility, and/or control with respect to the crediting of

18    compensation, thereby rendering Defendants fiduciaries in that regard.

19    114.    On further information and belief, Defendants have exercised actual discretionary

20    authority, responsibility, and/or control in determining what compensation would and would not

21    be credited under its compensation plans. By reason of the exercise of such discretion,

22    Defendants have been fiduciaries of the plans with respect to the crediting of compensation.

23    115.    On further information and belief, Defendants have exercised actual discretionary

24    authority, responsibility, and/or control in determining what compensation would and would not

25    be credited by its various compensation plans. By reason of the exercise of such discretion,

26    Defendants have been fiduciaries of its plans with respect to the crediting of compensation.

27    116.    Defendants have breached its fiduciary duties by failing to credit compensation to

28    Plaintiffs. This compensation includes, but is not limited to, health insurance, dental insurance,

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

1  stock options, prescription drugs, vision coverage, life insurance, disability insurance, business

2  travel insurance, personal accident insurance, retirement and 401(k) plans, pension benefits,

3  tuition reimbursement, and severance pay.  Plaintiff does not concede these benefits fall under

4  ERISA's pre-emption, but maintains this cause of action to the extent a court of law determines

5  the preemption applies.

6        117.   Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff, on behalf of

7  herself and all members of the ERISA Class, seeks an injunction requiring Defendants to credit

8  all members of the ERISA Class with compensation under the plans for all of the past and future

9  overtime work performed and all benefits Plaintiff was entitled to and any such other equitable

10  relief as this Court deems appropriate.

11        118.   Plaintiff on behalf of herself and members of the ERISA Class, seeks recovery of

12  her attorneys' fees and costs to be paid by Defendants, as provided by Section 502(g)(1) of

13  ERISA, 29 U.S.C. § 1132(g)(1).

14                     **PRAYER FOR RELIEF**

15        WHEREFORE, Plaintiff prays judgment for herself and all others on whose behalf this

16  suit is brought, against Defendants, jointly and severally, as follows:

17      **1.**    **On behalf of the Collective Action Class**

18          a.  For certification of the Collective Action Class as an opt-in Collective Action

19              pursuant to 29 U.S.C. §216(b);

20          b.  For appointment of Plaintiff as the representative of the Collective Action Class;

21          c.  For appointment of Counsel for Plaintiff as Class Counsel for the Collective

22              Action Class;

23          d.  That the Court declare the rights and duties of the parties consistent with the relief

24              sought by Plaintiff;

25          e.  Issue a declaratory judgment that Defendants' acts, policies, practices, and

26              procedures complained of herein violation provisions of the FLSA;

27          f.  That Defendants be enjoined from further violations of the FLSA;

28

g. That Plaintiff and the Collective Action Class recover compensatory damages and an equal amount of liquidated damages as provided under the law and in 29 U.S.C. §216(b).

**2.  On behalf of the California Class**

a. For certification of the Second through Sixth Causes of Action as a Class Action pursuant to California Code of Civil Procedure §382 and/or FRCP 23;

b. For appointment of Plaintiff as the representative of the California Class;

c. For appointment of Counsel for Plaintiff as Class Counsel for the California Class;

d. An order temporarily, preliminarily and permanently enjoining and restraining Defendants from engaging in similar unlawful conduct as set forth herein;

e. An order requiring Defendants to pay all wages and all sums unlawfully withheld from compensation due to Plaintiff and the other members of the Class;

f. Disgorgement of Defendants' ill-gotten gains into a fluid fund for restitution of the sums incidental to Defendants' violations due to Plaintiff and to the other members of the Class;

g. Compensatory damages, according to proof at the time of trial, including compensatory damages for both regular and overtime compensation due Plaintiff and the other members of the Class, during the applicable class period plus interests thereon at the statutory rate;

h. The greater of all actual damages or fifty dollars for the initial pay period in which a violation occurs and one hundred dollars per each member of the class for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars, and an award of costs for violations of the applicable Labor Codes;

i. For minimum wages, regular wages, and overtime wages for all work performed off-the-clock and unpaid wages for all work for which Class Members were not paid, including liquidated damages;

1        j.   For additional compensation for Defendants' failure to provide rest and meal

2              periods;

3        k.  For waiting time continuation of wages for up to thirty (30) days, as provided for

4              in California Labor Code § 203, for all California Class members who are no

5              longer employed by Defendants;

6        l.   For the amounts provided for in California Labor Code § 226(e);

7        m.  For restitution, as described in the claim for relief under California Bus. & Prof.

8              Code §§17200 et seq., above.

9     **3.**      **On behalf of the ERISA Class**

10       a.   Certification of this action as a class action on behalf of the proposed ERISA

11            Class;

12       b.   Designation of Plaintiff as representative of the ERISA Class;

13       c.   A declaration that the practices complained of herein violate ERISA;

14       d.   Appropriate equitable and injunctive relief to remedy Defendants' violations of

15            ERISA;

16       e.   A declaration that Defendants have breached its fiduciary duties by failing to

17            credit Plaintiff and the ERISA Class with eligible compensation for all work

18            performed, as required by ERISA and the terms of the applicable plans;

19       f.   An order required that Defendants remedy its breaches of fiduciary duty by

20            crediting Plaintiff and the ERISA Class for all of their past, present, and future

21            uncompensated work;

22       g.   Attorneys' fees and costs of suit; and

23       h.   Such other injunctive and equitable relief as the Court may deem necessary, just,

24            and proper.

25     **4.**      **On all causes of action.**

26       a.   For such general, special, and liquidated damages as may be appropriate, including

27            all damages alleged above.

28       b.   For pre-judgment interest.

1     c.  For costs of suit and attorneys' fees under the FLSA and California Labor Code §

2         1194 and other applicable provisions of law outside the Labor Code.

3     d.  For such other relief as the Court deems just and proper.

4               **JURY DEMAND**

5     Pursuant to Rule 38 of the FRCP, Plaintiff demands a trial by jury on all applicable issues.

6

7   DATED:  July 31, 2009              HIGGS, FLETCHER & MACK LLP

8

9                        By: _____

10                         SAM SHERMAN, ESQ.

                             LOREN G. FREESTONE, ESQ.

11                         Attorneys for Plaintiff

                             CARLOTTA BLOUNT, on behalf of

12                         herself and on behalf of all persons

                           similarly situated

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONSENT TO SUE FORM

### Consent to sue under the Fair Labor Standards Act (FLSA)

I work or worked for Automatic Data Processing, Inc. (ADP), or a company contracting with ADP, at some point after July 1, 2006 as a "contract employee" or "independent contractor."

I choose to participate in the FLSA collective action titled *Blount v. ADP, Inc., et al.,* Case No. _____ (S.D. Cal.). I agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable. I further agree to be bound by any collective action settlement approved by my attorneys and the Court as fair, adequate, and reasonable.

I choose to be represented in this matter by the named Plaintiff in this action and by the attorneys who already represent Plaintiff in this action, Higgs, Fletcher & Mack, and other attorneys with whom they may associate.

Print Name: _Carlotta Blount_

Sign Name: _Carlotta Blount_

Date Signed: _July 24, 2009_

918213.1

## FURTHER INFORMATION REGARDING CONSENT TO SUE FORM

Print Name: _Carlotta Blount_

Street Address: _1054 Naomi Drive_

City, State, and ZIP: _Vista, CA 92083_

Telephone Number(s):  (Home) _(760) 295-1679_

(Work) _(760) 295-0335_

(Cell) _(760) 586-2782_

E-Mail Address: _CarlottaBlount@hotmail.com_

**Further Information**
- Please see http://www.higgslaw.com for more information.
- This lawsuit seeks to pursue the misclassification, overtime pay, benefits, severance, and related claims of various workers employed by ADP and/or ADP contractors as "independent contractors" or "contract employees." This Action alleges that ADP misclassified workers as contract employees and, in doing so, ADP did not provide these employees the wages, benefits, and severance entitled to them.
- This Action also alleges that ADP entered into agreements with companies to provide manpower. Those employees performed a majority, if not all, of their work for ADP, had ADP supervisors, and were directed almost entirely by ADP. This lawsuit alleges that ADP was these individuals' "joint employer." However, ADP misclassified these individuals as "contract employees" or "independent contractors" to avoid providing them the same wages, benefits, and severance provided to ADP employees.
- This lawsuit seeks to enforce the rights of both former and current ADP employees.
- **It is illegal for any employer to retaliate against an individual for exercising his or her rights (such as by participating in this lawsuit, signing or submitting this form, or talking to attorneys about this lawsuit).**
- We are happy to discuss the right to full compensation for work performed with any individual. Please contact us at 619-595-4238.

**Instructions for Submitting the Attached Consent to Sue Form**
- Feel free to contact an attorney with Higgs, Fletcher & Mack to discuss your rights more fully and to determine if you are eligible to participate in this collective action lawsuit.
- Fax or mail both pages of this form to Higgs, Fletcher & Mack, attention Sam G. Sherman, at 619-696-1410 or 401 West A Street, 26th Floor, San Diego, CA 92101.
- Do not submit these forms directly to a court or judge.
- We will submit consent to sue forms only on behalf of people we have determined have a potentially valid claim, based on what those people have told us about their job duties and other factors. Ultimately, the court will decide if these people can participate in the case or not, and whether their claims are valid.

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
CARLOTTA BLOUNT, on behalf of herself and on behalf of all persons similarly situated

## DEFENDANTS
ADP, INC., a New Jersey Corporation; Wilson Worldwide, LLC, dba Wilson HR; and DOES 1-50

**FILED**

**09 JUL 31 PM 4:14**

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

**(b)** County of Residence of First Listed Plaintiff **San Diego**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **Essex County, NJ**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Sam G. Sherman
Higgs, Fletcher & Mack
401 West A Street, Suite 2600
San Diego, CA 92101
619 236 1551

Attorneys (If Known)

**'09 CV 1668 JAH POR**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☒ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | |
|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
29 U.S.C. section 201 et seq., 29 U.S.C. section 1101, et seq., 28 U.S.C. section 1367

Brief description of cause:
FLSA collection action for unpaid wages, benefits & severance

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 0.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE _____ DOCKET NUMBER _____

DATE 7/31/09

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT 350. APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

7/31/09

FDJS44

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS003798
Cashier ID: sramirez
Transaction Date: 07/31/2009
Payer Name: AMERICAN MESSENGER
----------------------------------
CIVIL FILING FEE
 For: BLOUNT V. ADP INC
 Case/Party: D-CAS-3-09-CV-001668-001
 Amount:        $350.00
----------------------------------
CHECK
 Check/Money Order Num: 2407
 Amt Tendered:  $350.00
----------------------------------
Total Due:       $350.00
Total Tendered: $350.00
Change Amt:      $0.00



There will be a fee of $45.00
charged for any returned check.
```